IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

MAURICE SMITH,

*Defendant.*

Criminal No. 2:23-cr-129 - 22

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Defendant Maurice Smith ("Smith") filed a Motion to Suppress Firearm and Accompanying Ammunition Seized from 21 Trent Street (ECF No. 851).[1]  The Government filed a response arguing that Smith's motion should be denied.  After careful consideration of the record and the parties' arguments, the Court will deny Smith's motion for the following reasons.

## I.   STANDARD OF REVIEW

The Fourth Amendment requires that search warrants be supported by probable cause. U.S. Const. Amend. IV. The probable cause standard for property searches under the Fourth Amendment is well-established. Whether probable cause exists is to be determined by a practical and commonsense approach. *Illinois v. Gates*, 462 U.S. 213 (1983).  The appropriate inquiry is "whether, given all the circumstances set forth in the affidavit ... including the [veracity] and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238–39.  When

---

[1] The Court has jurisdiction over the suppression motion under 18 U.S.C. § 3231.

1

reviewing a magistrate (or state court judge's) determination of probable cause to issue a warrant, a district court should "[pay] great deference" to the magistrate's decision. *Id.* at 236. This standard means that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 237, n.10. In *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984), the Supreme Court emphasized that a reviewing court is not to conduct a "*de novo* probable cause determination" but is to decide merely "whether the evidence reviewed as a whole provided a substantial basis for the ... finding of probable cause." Such deference, however, "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusion." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (citing *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983)). Rather, the duty of the reviewing court is to "ensure that the state district justice had a 'substantial basis' for concluding that the affidavit supporting the warrant established probable cause." *United States v. Mortimer*, 387 F. App'x 138, 140 (3d Cir. 2005) (citing *United States v. Jones*, 994 F.2d 1051, 1054 (3d Cir. 1993)); *see also United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) ("Keeping in mind that the task of the issuing magistrate is simply to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place, a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found.") (internal quotation marks omitted).

## II.    FACTUAL BACKGROUND

An Application for Search Warrant and Authorization ("Warrant") was applied for on August 31, 2022 at 9:15 a.m. by United States Marshals Service ("USMS") Deputized Task Force Officer and Pittsburgh Bureau of Police ("PBP") Narcotics Detective Joseph Novakowski ("Novakowski") and PBP Officer John Denis ("Denis"). That same day, the Honorable Kelly E.

Bigley of the Criminal Division of the Court of Common Pleas of Allegheny County, Pennsylvania, issued the Warrant. The items to be searched and seized were identified as "the bodies of Damon PETERS [ ] and Micah LATIMER [ ]. Any and all firearms, to include that observed being carried by Damon Peters during surveillance, ammunition, firearm components." (ECF No. 851-1, p. 1). The description of the place to be seized was "21 Trent Street Pittsburgh PA 15219. This is a two story red brick structure, marked with '21' in white next to the front door. Allegheny County Parcel ID: 0010-J-00087-0000-0." (*Id.*).

The Affidavit of Probable Cause ("Affidavit") to the Warrant explains that a felony warrant was obtained for Damon Peters ("Peters") on April 27, 2022. Peters was charged with various violations of the Pennsylvania Crimes Code – i.e., two counts of aggravated assault, carrying a fireman without a license, discharging a firearm in an occupied structure, possessing instruments of crime, and recklessly discharging a weapon – for a shooting incident between him and an unknown individual on April 17, 2022. (*Id.* at 2). Novakowski and Denis believed that Peters "would need to retain possession of a firearm in order to protect himself from retaliation." (*Id.* at 3).

An arrest warrant was also obtained for Micah Latimer ("Latimer") on August 4, 2022. Latimer was charged with simple assault, in violation of the Pennsylvania Crimes Code, for a domestic violence incident that occurred that day. Latimer's listed address was "21 Trent Street Pittsburgh PA 15219" ("21 Trent Street"). (*Id.* at 2).

According to the Affidavit, Peters had been wanted for months and the officers had developed information that he was frequenting 21 Trent Street. On August 30, 2022, Denis observed a vehicle Peters was a passenger in park in front of 211 Saint Joseph Street. As Peters walked to the front door of 211 Saint Joseph Street, Denis observed Peters "holding a distinct L-

shape object in the front object of his hoodie," that he "immediately recognized this as a firearm." (*Id.* at 3). After that, Denis and another detective positioned themselves to observe the front of 21 Trent Street. They watched Latimer exit and return to the residence four times. At 1725 hours, they observed Latimer and Peters both exit the residence. Peters was holding a fanny pack with his right hand, "which was immediately recognized as a firearm" by the officers. (*Id.*).

The Government has represented that the following regarding the execution of the Warrant on August 31, 2022, at 11:40 a.m. (ECF No. 898, p. 2). Peters was observed leaving 21 Trent Street with a firearm in his hand at 10:58 a.m., and returning at 11:27 a.m. When the Warrant was executed at 11:40 a.m., Smith exited the residence along with various other individuals, including Peters and Latimer. A Sig Sauer with an extended magazine and an obliterated serial number was recovered from under the couch in the living room. In the second-floor bedroom, officers recovered a stolen silver and tan SCCY 9mm pistol with a red dot sight and a Ruger 9mm pistol with an obliterated serial number from a storage seat at the foot of a bed. Officers also recovered a 9mm magazine under a dresser in the same room. Smith's identification was recovered from the nightstand in this room. In the second-floor middle bedroom, officers recovered a 9mm Glock magazine, a plastic bag of ammunition, and a box of new and unused stamp bags. Ammunition and indicia for Latimer were recovered from the third-floor left bedroom. A Glock 43x was recovered from the third-floor left bedroom closet and it was registered to the known girlfriend of Peters. (*Id.*).

### III.   ANALYSIS

The Court is cognizant of its limited role. Its role is not to determine whether probable cause actually existed. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001). Instead, it

must decide whether the issuing state court judge had "a 'substantial basis' for finding probable cause." *Id.* (quoting *United States v. Jones*, 994 F.2d 1051, 1054 (3d Cir. 1993)).   The Court holds that a substantial basis exists to support the probable cause finding of the state court judge.

There is ample evidence identified in the Affidavit that established a fair probability that Peters and Latimer, and evidence of a crime (i.e., illegal possession of firearms, ammunition, and firearm components), would be found at 21 Trent Steet.   "If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases." *Jones*, 994 F.2d at 1055-56 (quoting *Gates*, 462 U.S. at 232). This is certainly true as to Latimer; he had an active arrest warrant and 21 Trent Street was his residence.   As to Peters, there was enough evidence set forth in the Affidavit for the state court judge to conclude that Latimer's residence was a place where Peters was frequently visiting (and possibly staying), after being a fugitive for months.   It was reasonable for the state court judge to infer that any firearms used by Peters would be found there with him given that Peters's felony arrest warrant was for a shootout and the officers' experience led them to conclude that Peters "would need to retain possession of a firearm in order to protect himself from retaliation." (*Id.* at 3). *See United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) ("[D]irect evidence linking the residence to criminal activity is not required to establish probable cause.... Instead, probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested."); *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (state court judge was permitted to draw "reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." (quotation marks omitted)).   The state court judge was entitled

to "give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *Id.* at 296.

Magistrate judges (or state court judges) reviewing search warrant applications regularly defer to the assessments of experienced law enforcement officers on matters within their competence, and reviewing courts (like this Court) must defer to their credibility determinations. *See, e.g., Burton*, 288 F.3d at 99, 105.  Here, the officers observed Peters with what they knew based on their training and experience to be a concealed firearm on two different occasions while they were conducting surveillance.  While their experience-based conclusion that Peters was in possession of a firearm, alone, may not be enough to establish probable cause, the magistrate here correctly examined the totality of the circumstances and found a sufficient nexus between it, his prior criminal conduct, and fugitive status.  The Court would note that "[t]he suspected wrongful conduct, possession of weapons, is by its nature a continuous activity." *United States v. Strickland*, 237 F. App'x 773, 779 (3d Cir. 2007) (citation omitted).  Consequently, the passage of time between the shootout and the time it took to ascertain Peters's whereabouts is of little significance given the fact that once he was located he was observed to be in possession of a concealed firearm.

After a deferential and commonsense review of the Affidavit, and considering the totality of circumstances, the officers' training and experience, and assessing all reasonable inferences, the Court finds that the state court judge had a substantial basis for concluding that probable cause existed to authorize the Warrant.  Accordingly, the Court will deny Smith's motion to suppress the evidence found during the search.

Though the Court finds that the facts as stated in the Warrant establish a substantial basis to support the probable cause finding of the state court judge, had it held otherwise, the Warrant

was not based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  The officers executed the Warrant in good faith.

Under the good faith exception to the exclusionary rule, "a court should not suppress evidence seized under a warrant's authority, even if that warrant is subsequently invalidated, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'"  *United States v. Stearn*, 597 F.3d 540, 561 (3d Cir. 2010) (quoting *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002).  "Ordinarily, the 'mere existence of a warrant ... suffices to prove that an officer conducted a search in good faith,' and will obviate the need for 'any deep inquiry into reasonableness.'"  *Id.* (quoting *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)).  The United States Court of Appeals for the Third Circuit has announced the following four situations in which an officer's reliance on a warrant would not be reasonable, and would therefore not trigger the exception:

> (1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;
>
> (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Id.* (cleaned up).

The fourth exception is the only one Smith can touch upon to obviate the good faith exception – i.e., that "the good faith exception does not apply where the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).  The "threshold for establishing this exception is a high one."  *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).  An affidavit is

"so lacking in indicia of probable cause" when it contains nothing more than a bare bones assertion that evidence will be found in the place searched. *Leon*, 468 U.S. at 925. An affidavit is a "bare bones" affidavit where it relies only on an officer's unsupported belief that probable cause exists. *United States v. Pavulak*, 700 F.3d 651, 664 (3d Cir. 2012) (citing *United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005)); *see also Gates*, 462 U.S. at 239 (identifying the affidavits in *Nathanson v. United States*, 290 U.S. 41 (1933), and *Aguilar v. Texas*, 378 U.S. 108 (1964), as "bare bones" affidavits because each contained only an officer's belief that probable cause existed without providing any factual details)).

The Court holds that the Affidavit was not a bare bones document. It outlined the officers' extensive experience and training in investigations and arrests. Novakowski participated in hundreds of undercover operations as well as numerous fugitive investigations. Denis completed numerous search warrants and court orders for cell phones, social media accounts, and other media outlets to assist in locating and apprehending fugitives. Additionally, Denis has been involved in dozens of narcotics, firearms and warrant arrests. The Affidavit sets forth several factual bases indicative of Peters and Latimer's criminal behavior and outlined the officers' surveillance and investigative efforts into Peters and Latimer. The officers concluded that Latimer resided at 21 Trent Street, and Peters was frequenting the residence. The officers were of the firm opinion, based on their knowledge and experience, that Peters would likely be armed with a firearm. The Affidavit set forth how on two different occasions in one day, Peters was observed with what the officers knew based on their training and experience to be a secreted firearm. A Pennsylvania state court judge was called upon to assess facts demonstrating illegal activity by Peters and Latimer and exercised her judgment in finding probable cause. The Court finds that the Affidavit was not so lacking that reasonably well-trained officers would have

known that it was illegal despite the state court judge's authorization.   In other words, the officers who executed the Warrant acted reasonably in relying on the Warrant's authority.

## IV.   CONCLUSION

For these reasons of law and fact, Smith's Motion to Suppress Firearm and Accompanying Ammunition Seized from 21 Trent Street (ECF No. 851) will be denied.   An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

3-14-24
_____
Date